UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
José Rivera, individually and on behalf of all persons similarly situated,

                        Plaintiff,

          -against-

Stone Manor 101, Sparta Greek Taverna, Michael Cassarella, Tommy Stratis.

                       Defendants.
-------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL DEMANDED**

## NATURE OF ACTION

1. Plaintiff on behalf of himself and all persons similarly situated (collectively as the "FLSA Class"), brings this action to recover unpaid wages, unpaid overtime, liquidated damages, reasonable attorney fees and costs from the Defendants, for whom the Plaintiff and the FLSA Class performed work.

2. Plaintiff was a prep-chef employed in the Defendants' restaurant (the "Restaurant"). For a time prior to filing this Complaint, the Defendants willfully committed violations of 29 U.S.C §201 et. seq., (the "Fair Labor Standards Act" or "FLSA") and Article 19 of the New York Labor Law ("NYLL") by failing to keep accurate time records and failing to pay the Plaintiff and FLSA Class the rate of one-and-one-half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

3. The Defendants who are statutory employers, exercised control over the Plaintiff and FLSA Class Members' working conditions. Each week, the Plaintiff and FLSA Class Members worked more than 40 hours in the work week, but were not paid overtime wages. Instead, the Defendants paid the Plaintiff and FLSA Class a weekly salary regardless of the hours worked.

4. Plaintiff and the FLSA Class were also not provided with proper wage notices that informed them of their rate of pay and their rate of overtime, paid the Plaintiff and FLSA Class in cash and never recorded their work hours.

## JURISDICTION AND VENUE

5. This action arises under 29 U.S.C §201 et. seq., (the "Fair Labor Standards Act" or "FLSA").

6. This Court has jurisdiction under 28 U.S.C. §1331 and 29 U.S.C. § 216.

7. Plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Southern District of New York under 28 U.S.C. §1391 because the Defendants conduct business there and the cause of action arose there.

THE PARTIES

9. Plaintiff Jose Rivera ("Jose" or "Plaintiff") resides in Pleasantville, New York.

10. Defendant Stone Manor, Inc. ("Corporate Defendant") is a business, formed in the State of New York and is located at 101 Saw Mill River Rd., Hawthorne, NY 10532.

11. Defendant Sparta Greek Taverna, Inc. ("SGT") is a business, formed in the State of New York and is located at 6 Rockledge Ave, Ossining, NY 10562.

12. Upon information and belief, Defendant Michael Cassarella ("Cassarella") owns all or part of Corporate Defendant, owns all or part of SGT, and is domiciled in the State of New York.

13. Upon information and belief, Defendant Tommy Stratis ("Stratis") owns all or part of Corporate Defendant, owns all or part of SGT, and is domiciled in the State of New York.

**BACKGROUND FACTS**

14. Corporate Defendant is an "employer" under the FLSA.

15. SGT is an "employer" under the FLSA

16. Corporate Defendant is an "employer" under the NYLL.

17. SGT is an "employer" under the NYLL.

18. Corporate Defendant is a restaurant.

19. SGT is a restaurant.

20. Corporate Defendant is an eating or drinking place that prepares and offers food or beverage for human consumption on its premises to the public. [1]

21. SGT is an eating or drinking place that prepares and offers food or beverage for human consumption on its premises to the public. [2]

22. Corporate Defendant and SGT are engaged in the hospitality industry under the NYLL.

23. Corporate Defendant and SGT continue to employ employees who are similarly situated to Plaintiff.

24. Upon information and belief, Corporate Defendant is owned, in whole or in part, by Cassarella.

25. Upon information and belief, SGT is owned, in whole or in part, by Cassarella

26. Upon information and belief, Corporate Defendant is owned, in whole or in part, by Stratis.

---

[1] http://thestonemanor101.com/.
[2] http://spartany.com/welcome.html.

2

27. Upon information and belief, SGT is owned, in whole or in part, by Stratis.

28. During any period of time whatsoever between August 1, 2011 through August 1, 2017, Corporate Defendant had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

29. During any period of time whatsoever between August 1, 2011 through August 1, 2017, SGT had the ability to perform one or more of the following actions: (1) hire certain employees of SGT, (2) terminate the employment of certain employees of SGT, (3) set the wage rates of certain employees of SGT, (4) maintain payroll records for certain employees of SGT, or (5) institute work rules for certain employees of SGT.

30. During any period of time whatsoever between August 1, 2011 through July 8, 2017, Defendant Cassarella had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant.

31. During any period of time whatsoever between August 1, 2011 through August 1, 2017, Cassarella had the ability to perform one or more of the following actions: (1) hire certain employees of SGT, (2) terminate the employment of certain employees of SGT, (3) set the wage rates of certain employees of SGT, (4) maintain payroll records for certain employees of SGT, or (5) institute work rules for certain employees of SGT

32. During any period of time whatsoever between August 1, 2011 through August 1, 2017, Defendant Stratis had the ability to perform one or more of the following actions: (1) hire certain employees of Corporate Defendant, (2) terminate the employment of certain employees of Corporate Defendant, (3) set the wage rates of certain employees of Corporate Defendant, (4) maintain payroll records for certain employees of Corporate Defendant, or (5) institute work rules for certain employees of Corporate Defendant

33. During any period of time whatsoever between August 1, 2011 through August 1, 2017, Stratis had the ability to perform one or more of the following actions: (1) hire certain employees of SGT, (2) terminate the employment of certain employees of SGT, (3) set the wage rates of certain employees of SGT, (4) maintain payroll records for certain employees of SGT, or (5) institute work rules for certain employees of SGT

34. Corporate Defendant is involved in an industry affecting commerce within the meaning of the FLSA.

35. Corporate Defendant's annual revenues exceeded $500,000 for the year 2017.

36. Corporate Defendant's annual revenues exceeded $500,000 for the year 2016.

37. Corporate Defendant's annual revenues exceeded $500,000 for the year 2015.

38. Corporate Defendant's annual revenues exceeded $500,000 for the year 2014.

39. Corporate Defendant employs at least two employees who regularly engage in interstate commerce.

40. On information and belief, Corporate Defendant regularly employs an individual that regularly and customarily uses the interstate telecommunications network to process credit card transactions with firms outside the state of New York.

41. On information and belief, Corporate Defendant regularly purchases goods from locations manufactured outside the State of New York and utilizes such products within the State of New York.

42. The business activities of the Corporate Defendant are related and performed through unified operation or common control for a common business purpose and constitutes an enterprise within the meaning of the FLSA.

43. The Corporate Defendant engages in a combination of different activities in the course of its business operation, including but not limited to: (1) cooking food, (2) advertising, (3) bookkeeping, (4) managing employees, and (5) selling (the "Related Activities").

44. The Corporate Defendant has an organizational structure whereby there is an individual, or group of individuals, who control the Related Activities.

45. Corporate Defendant failed to keep accurate and sufficient payroll and time records concerning Plaintiff and the FLSA class.

46. Corporate Defendant did not use a punch card time keeping system between July 2011 and July 2017 to record Plaintiff's work hours.

47. Corporate Defendant did not use a handwritten time keeping system between July 2011 and July 2017 to record Plaintiff's work hours.

48. Corporate Defendant did not maintain sufficient payroll and time records to determine the weekly pay and hours worked by the Plaintiff and FLSA Class.

49. Corporate Defendant did not maintain time records that enable an individual to determine the daily start time and daily end time for the Plaintiff and FLSA Class.

50. SGT is involved in an industry affecting commerce within the meaning of the FLSA.

51. SGT's annual revenues exceeded $500,000 for the year 2017.

52. SGT's annual revenues exceeded $500,000 for the year 2016.

53. SGT's annual revenues exceeded $500,000 for the year 2015.

54. SGT's annual revenues exceeded $500,000 for the year 2014.

55. SGT employs at least two employees who regularly engage in interstate commerce.

56. On information and belief, SGT regularly employs an individual that regularly and customarily uses the interstate telecommunications network to process credit card transactions with firms outside the state of New York.

57. On information and belief, SGT regularly purchases goods from locations manufactured

outside the State of New York and utilizes such products within the State of New York.

58. The business activities of the SGT are related and performed through unified operation or common control for a common business purpose and constitutes an enterprise within the meaning of the FLSA.

59. SGT engages in a combination of different activities in the course of its business operation, including but not limited to: (1) cooking food, (2) advertising, (3) bookkeeping, (4) managing employees, and (5) selling (the "Related Activities").

60. SGT has an organizational structure whereby there is an individual, or group of individuals, who control the Related Activities.

61. SGT failed to keep accurate and sufficient payroll and time records concerning Plaintiff and the FLSA class.

62. SGT did not use a punch card time keeping system between July 2011 and July 2017 to record Plaintiff's work hours.

63. SGT did not use a handwritten time keeping system between July 2011 and July 2017 to record Plaintiff's work hours.

64. SGT did not maintain sufficient payroll and time records to determine the weekly pay and hours worked by the Plaintiff and FLSA Class.

65. SGT did not maintain time records that enable an individual to determine the daily start time and daily end time for the Plaintiff and FLSA Class.

**Class Definition**

66. Plaintiff brings each Cause of Action of this lawsuit against under the FLSA 29 U.S.C §216(b), Corporate Defendant and individual Defendants as a collective action on behalf of the following class of potential opt-in litigants:

    **All current and former non-service employees, as defined in 12 NYCRR §146-3.3(b), of Corporate Defendant who performed work in New York in any workweek in the past three years ("FLSA Class").**

67. Plaintiff brings each Cause of Action of this lawsuit against under the FLSA 29 U.S.C §216(b), SGT and individual defendants as a collective action on behalf of the following class of potential opt-in litigants.

    **All current and former non-service employees, as defined in 12 NYCRR §146-3.3(b), of Corporate Defendant who performed work in New York in any workweek in the past three years ("FLSA Class").**

68. Plaintiff reserves the right to redefine the FLSA Class prior to class certification and thereafter, as necessary.

**PLAINTIFF JOSÉ RIVERA:**

69. Plaintiff started working for Corporate Defendant in or around June 2013.

70. Plaintiff stopped working for Corporate Defendant in or around October 2016.

71. Plaintiff worked for Corporate Defendant as a food preparer.

72. Plaintiff performed work for Corporate Defendant during the 2016 calendar year.

73. Plaintiff performed work for Corporate Defendant during the 2015 calendar year.

74. Plaintiff performed work for Corporate Defendant during the 2014 calendar year.

75. Plaintiff performed work for Corporate Defendant during the 2013 calendar year.

76. Corporate Defendant paid Plaintiff a weekly salary.

77. Corporate Defendant paid Plaintiff in cash.

78. Plaintiff regularly worked more than 40 hours in a workweek while employed by Corporate Defendant.

79. Plaintiff worked more than 10 hours each day Plaintiff worked for the Corporate Defendant.

80. Plaintiff regularly worked 6 days per week for the Corporate Defendant.

81. Corporate Defendant failed to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate on days in which Plaintiff worked in excess of 10 hours.

82. Each workday, Plaintiff was not provided with a complete reprieve from work for at least 30 minutes as and for a lunch period.

83. Corporate Defendant regularly did not pay Plaintiff an overtime premium for hours worked over 40 in a workweek.

84. Corporate Defendant was aware that Plaintiff worked more than 40 hours during certain workweeks.

85. Corporate Defendant required that Plaintiff work more than 40 hours during certain workweeks.

86. Corporate Defendant did not pay Plaintiff an hourly wage.

87. Each pay period during which Plaintiff worked for Corporate Defendant, Corporate Defendant did not compute a regular hourly pay rate for Plaintiff by dividing Plaintiff's weekly compensation by the hours Plaintiff worked in the workweek (the "Regular Rate").

88. Each pay period during which Plaintiff worked for Corporate Defendant, Corporate Defendant did not compute an overtime rate for Plaintiff by first computing the Regular Rate, multiplying the Regular Rate by 1.5x (the "Overtime Rate").

89. Each pay period during which Plaintiff worked for Corporate Defendant, Corporate Defendant did not compute an overtime premium for Plaintiff by first computing the Regular Rate, and dividing the Regular Rate in half.

90. Plaintiff never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

91. Plaintiff started working for SGT in or around October 2016.

92. Plaintiff stopped working for SGT in or around May 2017.

93. Plaintiff worked for SGT as a food preparer

94. Plaintiff performed work for SGT during the 2017 calendar year.

95. Plaintiff performed work for SGT during the 2016 calendar year.

96. SGT paid Plaintiff a weekly salary.

97. SGT paid Plaintiff in cash.

98. Plaintiff regularly worked more than 40 hours in a workweek while employed by SGT.

99. Plaintiff worked more than 10 hours most days Plaintiff worked for SGT.

100. Plaintiff regularly worked 6 days per week for SGT.

101. SGT failed to pay Plaintiff one additional hour of pay at the basic minimum hourly wage rate on days in which Plaintiff worked in excess of 10 hours.

102. Each workday, Plaintiff was not provided with a complete reprieve from work for at least 30 minutes as and for a lunch period.

103. SGT regularly did not pay Plaintiff an overtime premium for hours worked over 40 in a workweek.

104. SGT was aware that Plaintiff worked more than 40 hours during certain workweeks.

105. SGT required that Plaintiff work more than 40 hours during certain workweeks.

106. SGT did not pay Plaintiff an hourly wage.

107. Each pay period during which Plaintiff worked for SGT, SGT did not compute a regular hourly pay rate for Plaintiff by dividing Plaintiff's weekly compensation by the hours Plaintiff worked in the workweek (the "Regular Rate").

108. Each pay period during which Plaintiff worked for SGT, SGT did not compute an overtime premium for Plaintiff by first computing the Regular Rate, multiplying the Regular Rate by 1.5x (the "Overtime Rate").

109. Each pay period during which Plaintiff worked for SGT, SGT did not compute an overtime premium for Plaintiff by first computing the Regular Rate, and then dividing the Regular Rate in half.

110. Plaintiff never had the power to hire or fire employees, control employee work hours or otherwise control other employee work conditions.

7

**Collective Action Allegations**

111. Plaintiff brings this lawsuit under 29 U.S.C §216(b) as a collective action on behalf of the FLSA Class defined above.

112. Plaintiff desires to pursue his FLSA claim on behalf of any individuals who opt-in to this action under 29 U.S.C. §216(b).

113. Plaintiff and the FLSA Class are "Similarly Situated", as that term is used in 29 U.S.C.§216(b), because, inter alia, all such individuals worked as non-service employees under Corporate Defendant's previously described common pay practices and, because of such practices, were not paid the full and legally-mandated overtime premium for hours worked over 40 during the workweek. Resolution of this action requires inquiry into common facts, including, inter alia, Corporate Defendant's common compensation, timekeeping and payroll practices.

114. Specifically, Corporate Defendant typically paid Plaintiff and the FLSA Class by misclassifying employees as independent contractors, failing to provide employees with proper notices of the pay structure, failing to pay employees the proper direct wage, failing to pay employees overtime, and not maintaining proper record of employee work hours.

115. The Similarly-Situated employees are known to Corporate Defendant, are readily identifiable, and may be located through Corporate Defendant's records and the records of any payroll company that Corporate Defendant uses. Corporate Defendant employs FLSA Class Members throughout the State of New York. These similarly-situated employees may be readily notified of this action through direct U.S mail and/or other appropriate means, and allowed to opt into it pursuant to 29 U.S.C. §216(b), for the collective adjudication of their claims for overtime compensation, liquidated damages, interest, and attorneys' fees and costs under the FLSA.

### AS AND FOR A FIRST CAUSE OF ACTION
#### (Failure to pay overtime)
#### (Federal)
#### (on Behalf of the FLSA Class)

116. Plaintiff repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

117. The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 *et seq.,* and the supporting federal regulations, apply to Defendants and protect the Plaintiff and FLSA Class.

118. Defendants failed to pay Plaintiff and FLSA Class overtime wages to which they are entitled under the FLSA and the supporting Federal Regulations.

119. Because of Defendants' unlawful acts, Plaintiff and the FLSA Class have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to the FLSA.

120. Defendants' unlawful conduct, as described in this Complaint, has been willful and intentional. Defendants were aware or should have been aware that the practices described in this Complaint are unlawful. Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiff.

121. Because Defendants' violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(Failure to pay overtime)**
**(NY STATE)**
**(On behalf of the FLSA Class)**

122. Plaintiff repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

123. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect the Plaintiff.

124. Defendants failed to pay Plaintiff and the FLSA Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

125. By Defendants' knowing or intentional failure to pay Plaintiff and FLSA Class overtime wages for hours worked over 40 hours per workweek, they have willfully violated NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

126. Due to Defendants' violations of the NYLL, Plaintiff and the FLSA Class are entitled to recover unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest from the Defendants.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(Failure to pay wages)**
**NY Lab. Law §191**
**(On Behalf of the FLSA Class)**

127. Plaintiff repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

128. Under NYLL §191, an employer is required to pay an employee within one week of the services performed by the employee.

129. Defendants failed to pay Plaintiff and the FLSA Class their wages as required by NYLL §191 by not paying wages within the statutory time-period.

130. On information and belief, Defendants engaged in an ongoing practice of failing to remit to Plaintiff and the FLSA Class all wages that were earned.

131. Because of Defendants' unlawful withholding of wages, Plaintiff and the FLSA Class suffered harm.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Failure to provide wage notices)
### (NY STATE)
### (On Behalf of the FLSA Class)

132. Plaintiff repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

133. Pursuant to the Wage Theft Prevention Act, New York Labor Law, §195, Defendants willfully failed to furnish Plaintiff and FLSA Class with a required notice containing the following information:

    i. the rates or rates of pay and basis thereof,

    ii. whether paid by the hour, shift, day, week, salary, piece, commission or other allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances;

    iii. the regular pay designated by the employer in accordance with NYLL §191;

    iv. the name of the employer;

    v. Any "doing business as" names used by the employer;

    vi. The physical address of the employer's main office or principal place of business, and a mailing address, if different;

    vii. The telephone number of the employer

134. Defendants willfully failed to furnish Plaintiff and the FLSA Class with an accurate statement of wages as required by NYLL §195(3), containing the dates of work covered by that payment of wages; name of the employee; name of the employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by hour, shift, day, week, salary, piece, commission, or other; gross wages; hour rate or rates of pay, and overtime rates of pay; the number of hours worked, including overtime hours; deductions, allowances, and net wages.

135. Due to Defendants' violation of NYLL §195(1), Plaintiff and the FLSA Class are entitled to recover from Defendants liquidated damages of $50 per each workday that the violation occurred, up to a maximum of $5,000, reasonable attorney fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-b).

136. Defendants failed to provide Plaintiff and the FLSA Class with a with each payment of wages that set forth Plaintiff's hours worked, rates of pay, gross wages, credits claimed (for tips, meals and lodging) if any, deductions and net wages.

137. Due to Defendants' violation of NYLL §195(3), Plaintiff and the FLSA Class are entitled to recover from Defendants liquidated damages of $250 per each workday that the violation occurred, up to a maximum of $5,000, reasonable attorney fees, and costs and disbursements of this action, pursuant to NYLL § 198(1-d).

## AS AND FOR A FOURTH CAUSE OF ACTION
### (Spread of Hours)
### (12 NYCRR §146-1.6)
### (On Behalf of the FLSA Class)

138. Plaintiff repeats, re-alleges and reincorporates all allegations as though fully set forth herein.

139. The spread of hours provisions in 12 NYCRR §146-1.6 apply to the Defendants and protect the Plaintiff and FLSA Class Members.

140. The Defendants regularly required the Plaintiff and FLSA class to work more than ten hours in each workday.

141. The Defendants did not comply with the provisions of the 12 NYCRR §146-1.6 which requires that the Defendant pay the Plaintiff and the FLSA Class Members one additional hour of pay at the basic minimum hourly rate for each day on which the spread of hours exceeded ten hours.

142. By the Defendants failure to comply with the provisions of 12 NYCRR §146-1.6, the Plaintiff and FLSA Class Members were not paid for all compensation due and are entitled to recover unpaid spread of hour premiums, liquidated damages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest from the Defendants.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff seeks the following relief:

A. An Order permitting this litigation to proceed as an FLSA collective action pursuant to 29 U.S.C. §216(b);

B. Prompt notice, pursuant to 29 U.S.C. §216(b), of this litigation to all potential FLSA Class Members;

C. Unpaid wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor regulations;

D. Unpaid wages pursuant to NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations, and an additional and equal amount as liquidated damages pursuant to NYLL § 663;

E. Unpaid wages pursuant to NYLL §191 and an additional and equal amount as liquidated damages pursuant to the NYLL §198(1-a).

F. Statutory damages equal to $50 for each workday up to a maximum of $5,000

for each workday Plaintiff was not provide a wage notice pursuant to NYLL §198(1-b);

    G.      Statutory damages equal to $250 for each workday up to a maximum of $5,000 for each workday Plaintiff was not provide a statement of wages pursuant to NYLL §198(1-d);

    H.      A spread of hours premium equal to one additional hour of pay at the prevailing NYS Minimum Wage rate for each day on which the workday exceeded ten hours, and an equal amount as liquidated damages.

    I.      Pre-judgment interest and post-judgment interest;

    J.      Issuance of a declaratory judgment that the practices complained of in this Complaint are unlawful under NYLL Art. 6, §§ 190 *et seq.,* NYLL Art. 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor regulations;

    K.      An injunction requiring Defendants to pay all statutorily required wages pursuant to the NYLL and an order enjoining Defendant from continuing its unlawful policies and practices as described herein;

    L.      Reasonable attorney fees and costs of the action;

    M.      Pre-judgment interest and post judgment interest;

    N.      Such other relief as this Court shall deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Fed. R. Civ. P., Plaintiff demands a trial by jury on all questions of fact raised by this Complaint.

Dated:   White Plains, New York
            July 25, 2017

                                                  EL-HAG & ASSOCIATES, P.C

                                                  Jordan El-Hag, Esq.
                                                  777 Westchester Ave, Suite 101
                                                  White Plains, N.Y, 10604
                                                  (914) 218-6190 (p)
                                                  (914) 206-4176 (f)
                                                  Jordan@elhaglaw.com
                                                  www.elhaglaw.com