UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE RIVERA, individually and on behalf of all
persons similarly situated,

Plaintiff,

v.

HUDSON VALLEY HOSPITALITY GROUP,
INC.; GOLDFISH RESTAURANTS, INC.;
MICHAEL CASARELLA; and ATHANASIOS
STRATIGAKIS.

Defendants.

No. 17-CV-5636 (KMK)

OPINION & ORDER

Appearances:

Jordan El-Hag, Esq.
El-Hag & Associates, P.C.
White Plains, NY
*Counsel for Plaintiffs*

Sharman T. Propp, Esq.
Sharman T. Propp, Attorney At Law
Briarcliff Manor, NY
*Counsel for Defendants*

Mark Anthony Rubeo, Jr., Esq.
Reisman, Rubeo & McClure, LLP
Hawthorne, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Jose Rivera ("Plaintiff") brings this putative Class Action against Hudson Valley

Hospitality Group, Inc. ("Hudson Valley"), Goldfish Restaurants, Inc. ("Goldfish") (together, the

"Corporate Defendants"), Michael Casarella ("Casarella"), and Athanasios Stratigakis

("Stratigakis") (collectively, "Defendants"), asserting claims for failure to pay overtime wages

under the Fair Labor Standards Act of 1983 ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, and Articles 6 and 19 of the New York Labor Law ("NYLL"), N.Y. Lab. Law Art. 19 §§ 650 *et seq.* & Art. 6 §§ 190 *et seq.* (*See generally* Am. Compl. (Dkt. No. 23).)

Before the Court are Plaintiff's objections to the decision of Judge Lisa M. Smith ("Judge Smith") to deny Plaintiff's motion for spoliation sanctions. (*See* Pl.'s Objs. to Dec. & Order ("Pl.'s Objs.") (Dkt. No. 54).) For the following reasons, the Plaintiff's Objections are overruled.

## I.  Factual & Procedural History

On July 25, 2017, Plaintiff commenced this action on behalf of himself and all persons similarly situated against Stone Manor 101 ("Stone Manor"), Sparta Greek Taverna ("Sparta"), Cassarella, and Tommy Stratis ("Stratis"). (Compl. (Dkt. No.1).) On March 12, 2018, Plaintiff filed a First Amended Complaint, which named Hudson Valley, Goldfish, Casarella, and Stratigakis as Defendants; Stone Manor, Stratis, and Sparta were subsequently terminated from the docket. (Am. Compl.; Dkt. (entry for Mar. 12, 2018).) The Amended Complaint alleges that Plaintiff worked for the Corporate Defendants' restaurants, which were owned and operated by Casarella and Stratigakis. (Am. Compl. ¶¶ 2, 9–13.) Plaintiff alleges that Defendants violated the FLSA and the NYLL by failing to keep accurate time records and failing to pay Plaintiff overtime wages. (*Id.* ¶ 2.)

The case was referred to Judge Smith for discovery on February 5, 2018. (Dkt. No. 14.) In Plaintiff's initial request for production of documents, dated February 12, 2018, Plaintiff requested, inter alia:

> [e]very document that any Defendant used, created and/or maintained to record any wages paid to any Plaintiff during the Relevant Time Period. This request is seeking the business records that memorialized the Wages that any Defendant paid to any Plaintiff for the Work the Plaintiff performed for the Defendants. Including

but not limited to, payroll journals, records of payments, bank records, cancelled checks, payment receipts, IRS-W-2 forms or 1099-Forms, NYS-45 tax forms, Pay Notices, etc.

(Pl.'s Aff'n in Supp. of Objs. ("Pl.'s Aff'n") Ex. 8 ("Pl.'s Doc. Request") (Dkt. No. 55).) On September 28, 2018, Defendants produced payroll records in response to Plaintiff's document request. (Pl.'s Aff'n Exs. 10–13 ("Payroll Records").) The payroll records consist of Excel spreadsheets dated from July 22, 2013 through September 11, 2016. (*Id.*) On October 5, 2018, Plaintiff's counsel sent an email to Defendants' counsel requesting the "underlying documents that [Defendants] used to create the[] spreadsheets"; Defendants' counsel responded on October 9, 2018, writing, "I'll get you the underlying documents." (Pl.'s Aff'n Ex. 5 ("Oct. 9 Email").) On October 19, 2018, Defendants' counsel forwarded "the documents used to create the timesheets." (Pl.'s Aff'n Ex. 6 ("Oct. 19 Email"); Pl.'s Aff'n Ex. 9 ("Payroll Ledgers").) The documents provided were copies of handwritten payroll ledgers for 2013 through 2016. (*See* Payroll Ledgers.) The documents listed the amount that Plaintiff was paid but did not include any entries regarding the number of hours worked. (*Id.*) On November 27, 2018, Plaintiff's counsel emailed Defendants' counsel asking, "can you please confirm that your clients have provided me with all of the pay and time records concerning this matter[?]" (Pl.'s Aff'n Ex. 16 ("Nov. 27 Email").) According to Plaintiff, "Defendants never indicated other time records existed." (Pl.'s Mem. of Law in Supp. of Objs. ("Pl.'s Objs. Mem.") 3 (Dkt. No. 54); *see also id.* at 6 ("The Defendants never mentioned that any other time records existed or were destroyed.").)

On November 30, 2018, Casarella was asked at his deposition about the creation of the Excel spreadsheets and the documents upon which they were based. (*See* Pl.'s Aff'n Ex. 3 ("Casarella Dep.").) Casarella testified that the underlying handwritten records no longer

existed.  (*Id.* at 78.)[1]  He testified that his practice was to keep the handwritten time records for approximately a year.  (*See id.* at 82–83 ("I would probably keep them for a year's basis and—I don't know.  I would keep them for a while, yes, maybe a year, I would say, roughly.")).

During a status conference on January 18, 2019, Judge Smith ordered Defendants to produce the underlying timesheets by January 28, 2019.  (Dkt. (entry for Jan. 18, 2019).)  On January 28, 2019, Defendants' counsel sent an email to Plaintiff's counsel stating, "[m]y client cannot locate those records that we were supposed to turn over by the end of today."  (Pl.'s Aff'n Ex. 14 ("Jan. 28 Email").)  On February 15, 2019, Judge Smith granted Plaintiff leave to file a motion for spoliation sanctions.  (Dkt. (entry for Feb. 15, 2019).)  Plaintiff filed his Motion on February 21, 2019.  (Pl.'s Mem. in Supp. of Mot. for Sanctions ("Pl.'s Mem.") (Dkt. No. 44).)  Defendants filed a response on March 8, 2019.  (Defs.' Opp'n to Mot. for Sanctions ("Defs.' Mem.") (Dkt. No. 49).)

On March 26, 2019, Judge Smith denied Plaintiff's motion for spoliation sanctions.  (Dec. & Order on Pl.'s Mot. for Sanctions ("Decision") (Dkt. No. 53).)  Specifically, Judge

---

[1] The following colloquy took place during Casarella's deposition:

```
2    Q.  There were some records at some
3    time?
4    A.  At some time, they would have
5    handwritten what time they left and then
6    they would have been put together [sic] an Excel
7    spreadsheet to make it simpler.
8    Q.  What happened to the
9    handwritten records you were referring to?
10   A.  Once it's put into the computer
11   system, the handwritten records are not
12   kept there anymore.  They would be put into the
13   computer system.
```

(Casarella Dep. at 78.)

Smith held that Defendants were not obligated to preserve handwritten time records under state or federal law, that evidence of Defendants' culpable state of mind was "equivocal" at best, and that the handwritten records were not relevant to Plaintiff's case. (*See id.* at 8–15.) On April 8, 2019, Plaintiff filed Objections to Judge Smith's Decision pursuant to Federal Rule of Civil Procedure 72. (Pl.'s Objs. Mem.; Pl.'s Aff'n.) On April 30, 2019, Defendant filed a response to Plaintiff's Objections. (*See* Defs.' Resp. to Pl.'s Objs. ("Defs.' Objs. Mem.") (Dkt. No. 59).) Plaintiff filed a reply on May 13, 2019, (*see* Pl.'s Reply in Further Supp. of Objs. ("Pl.'s Objs. Reply") (Dkt. No. 63)), and Defendants filed a sur-reply on May 21, 2019, (Defs.' Sur-Reply in Further Opp'n to Objs. ("Defs.' Objs. Sur-Reply") (Dkt. No. 65)).

## II. Discussion

### A. Standard of Review

A district court reviewing a Decision addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). However, "[u]nder Rule 72, a district judge reviews a 'pretrial matter *not* dispositive of a party's claim or defense' under the 'clearly erroneous or . . . contrary to law' standard." *Royal Park Investments SA/NV v. U.S. Bank Nat'l Ass'n*, 349 F. Supp. 3d 298, 303 (S.D.N.Y. 2018) (quoting Fed. R. Civ. P. 72(a)). "Denying the preclusion sanction for a discovery violation is not a case-dispositive order warranting de novo review," because "[i]t does not dispose of any claim or defense." *Id.*[2] "When a party timely objects to an order on a non-dispositive pretrial matter issued by a magistrate judge, '[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous

_____

[2] The Parties do not dispute that the Rule 72(a) standard applies to Plaintiff's Objections. (*See* Pl.'s Objs. Mem. 6 (describing the clear error standard under Rule 72(a)); Defs.' Objs. Mem. 4–5 (same).)

or is contrary to law.'" *Tchatat v. O'Hara*, No. 14-CV-2385, 2017 WL 3172715, at *10 (S.D.N.Y. July 25, 2017) (quoting Fed. R. Civ. P. 72(a)). "An order is clearly erroneous only when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Khaldei v. Kaspiev*, 961 F. Supp. 2d 572, 575 (S.D.N.Y. 2013) (citation and quotation marks omitted). "It is contrary to law if it fails to apply or misapplies relevant statutes, case law or rules of procedure." *Id.* (citation and quotation marks omitted). Because "[a] magistrate judge is best qualified to judge the entire atmosphere of the discovery process . . . [her] rulings on discovery matters are entitled to substantial deference." *U2 Home Entm't, Inc. v. Hong Wei Int'l Trading Inc.*, No. 04-CV-6189, 2007 WL 2327068, at *1 (S.D.N.Y. Aug. 13, 2007) (citation and quotation marks omitted). "This is a highly deferential standard, and the objector thus carries a heavy burden." *Khaldei*, 961 F. Supp. 2d at 575 (citation omitted); *see also Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 206 F.R.D. 78, 86 (S.D.N.Y. 2002) (same).

### B. Analysis

Plaintiff objects to Judge Smith's decision not to impose spoliation sanctions. Specifically, Plaintiff argues that: (1) Judge Smith erred in holding that Plaintiff failed to establish that Defendants violated a duty to preserve Plaintiff's time records; (2) Judge Smith erred in holding that Plaintiff failed to establish that Defendants destroyed the original time records after the lawsuit began, and thus failed to establish that Defendants had a culpable state of mind; (3) Judge Smith erred in holding that an adverse inference instruction was not warranted; and (4) Judge Smith erred by not awarding Plaintiff attorneys' fees. (*See generally* Pl.'s Objs. Mem.)

### 1.  Applicable Law

"Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008)).  "A party seeking sanctions for spoliation has the burden of establishing the elements of a spoliation claim." *Id.* (citation omitted).  "These elements are '(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.'" *Id.* (alteration omitted) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)).  In other words, "for sanctions to be appropriate, it is a necessary, but insufficient, condition that the sought-after evidence *actually existed and was destroyed*." *Farella v. City of New York*, Nos. 05-CV-5711 and 05-CV-8264, 2007 WL 193867, at *2 (S.D.N.Y. Jan. 25, 2007).  The party seeking sanctions need not produce direct evidence of spoliation; rather, "circumstantial evidence may be accorded equal weight with direct evidence and standing alone may be sufficient." *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 500 (S.D.N.Y. 2016) (citations omitted).  If that party proves "negligent" spoliation, it "must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by that party." *Tchatat*, 249 F. Supp. 3d at 706 (citation and quotation marks omitted).  However, if that party proves "bad faith"—that is, intentional spoliation—"relevance may be presumed from the fact of the evidence's destruction." *Id.* (citation omitted); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 109 (2d Cir. 2002) ("Where a party

destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party.").

"If the requisite showing is made, sanctions may be proper under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order."  *Farella*, 2007 WL 193867, at *2; *see also West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) ("A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order.").  "Determining the proper sanction to impose for spoliation is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 554 (S.D.N.Y. 2015) (citation, quotation marks, and alterations omitted).  At all times, however, a sanction should "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party."  *Tchatat*, 249 F. Supp. 3d at 707 (quoting *West*, 167 F.3d at 779).  "[A] court should always impose the least harsh sanction that can provide an adequate remedy."  *Id.* (citation and quotation marks omitted).

### 2.  Application

#### a.  Duty to Preserve Under FLSA and NYLL

Plaintiff argues that Judge Smith "incorrectly held that an employer can destroy its original, contemporaneous time records within the statutory periods pr[e]scribed by the FLSA and [NYLL]'s record keeping requirements."  (Pl.'s Objs. Mem. at 7–8.)  Plaintiff first argues that Judge Smith "cited the incorrect provision of law" when she applied 12 N.Y.C.R.R. § 142, rather than 12 N.Y.C.R.R. § 146, which pertains specifically to the hospitality industry.  (Pl.'s

Objs. Mem. at 8–9.)  However, the recordkeeping standards included in these two provisions are substantively identical.  Under 12 N.Y.C.R.R. § 142-2.6, "Every employer shall establish, maintain[,] and preserve for not less than six years, weekly payroll records . . . ."  Under 12 N.Y.C.R.R. § 146-2.1(a), "Every employer shall establish, maintain[,] and preserve for at least six years weekly payroll records . . . ."  Thus the application of § 142 rather than § 146 is, at most, harmless error.

Next, Plaintiff interprets § 146-2.1(e), which provides that "[e]mployers, including those who maintain their records containing the information required by this section . . . shall make such records or sworn certified copies thereof available at the place of employment upon request of the commissioner[,]" and NYLL § 195(4), which provides that an employer "must establish, maintain[,] and preserve for not less than six years contemporaneous, true, and accurate payroll records," to mean that employers must keep the original versions of all employee time records, and argues Judge Smith committed clear error by holding otherwise.  (Pl.'s Objs. Mem. at 9–10.)  However, there is nothing in the statutory language mandating the preservation of *original* time records, rather than preserving the same information contained in those time records in another format.  Indeed, the word "original" appears nowhere in § 146-2.1 or § 195(4).  Although Plaintiff argues that his conclusion reflects "well-settled law," he cites only a single case in support of this proposition, issued in 1972.  (Pl.'s Objs. Mem. 8 (citing *United States v. Sancolmar Indus., Inc.*, 347 F. Supp. 404, 407 (E.D.N.Y. 1972)).  Even if that case was binding on this Court, the court there was not evaluating the culpability of a party who spoliated evidence, but rather determining whether a government contractor failed to maintain adequate

and accurate payroll records as required by 41 U.S.C. § 36, *Sancolmar*, 347 F. Supp. at 405–06, a statute not at issue in this Action.[3]

The limited caselaw that deals with the creation of copies and subsequent destruction or loss of original versions of evidence in the context of spoliation suggests that the mere transfer of information into a different medium, if accurate, will not support spoliation sanctions. *See Hamilton v. Mount Sinai Hosp.*, 528 F. Supp. 2d 431, 444 (S.D.N.Y. 2007) (holding spoliation sanctions unwarranted where the destroyed documents "were merely the handwritten versions of notes that were then put into typewritten form," and thus "the party destroying the notes would have no reason to think that he or she was destroying notes that would ultimately be useful to any party in the future"), *aff'd*, 331 F. App'x 874 (2d Cir. 2009); *see also Borwick v. T-Mobile W. Corp.*, No. 11-CV-1683, 2012 WL 3984745, at *2 (D. Colo. Sept. 11, 2012) (finding spoliation sanctions inappropriate where the defendant "made true copies prior to discarding the" originals, suggesting "nothing more than a routine, good-faith operation of an electronic information system" (citation and quotation marks omitted)). The Court therefore finds no clear error in Judge Smith's conclusion that Defendants' failure to retain the original handwritten time records violated any duty to preserve payroll records under state law.

Plaintiff's argument that Judge Smith misinterpreted the regulations pertaining to the FLSA is similarly unavailing. (*See* Pl.'s Objs. Mem. 9–10.) Federal regulations require that "[e]very employer shall maintain and preserve payroll or other records . . . ," 29 C.F.R. §

---

[3] The court in *Sancolmar* ultimately affirmed an administrative order finding that the defendants violated the statute by failing to pay overtime wages for hours worked in excess of 50 hours a week where the hearing examiner found that substituted payroll records in fact contradicted "the original payroll book seen by [a] compliance officer." (*Id.* at 407 & n.4.) The violation was thus based on the failure to accurately record and compensate all hours worked, rather than the destruction of the original time records.

516.2(a), and that "[e]ach employer shall preserve for at least 3 years . . . [f]rom the last date of entry, all payroll or other records containing the employee information and data required under any of the applicable sections of this part," 29 C.F.R. § 516.5. As Judge Smith observed, "[n]one of these requirements require that such records must be original and absolutely contemporaneous with the work so recorded." (Decision 9.) Judge Smith held that "so long as employee work records are (a) accurate, (b) are prepared at or near the time of work performed, and (c) are maintained," the requirements of 29 C.F.R. § 516.5 are satisfied. (*Id.* at 10.)

Absent any caselaw to the contrary, the Court finds that Judge Smith's conclusion was not clear error. Plaintiff did not adduce any evidence suggesting that the records produced by the Defendant were inaccurate. Plaintiff suggests that without original copies of the handwritten records, there is no proof that Defendants did not "simply make up some fake time records once [they] were sued." (Pl.'s Objs. Mem. 11.) Although Plaintiff argues that he is "prejudiced from [not] being able to confirm the accuracy of the[] time records," (*id.* at 22), he points to no testimony or other evidence from which a fact finder could infer that the records contain inaccuracies. Nor does Plaintiff identify a single entry that he believes to be inaccurate. The absence of such evidence undercuts Plaintiff's claim. *See Mazza v. Dist. Council for New York & Vicinity United Bhd. of Carpenters & Joiners of Am.*, No. 00-CV-6854, 2008 WL 11411849, at *5 (E.D.N.Y. July 2, 2008) (holding the plaintiff's "conclusory statement" that allegedly destroyed payroll records "would have evidenced several additional hours (maybe more but will never be discovered)," could not "sustain a claim of spoliation without more" and collecting cases).

Additionally, Plaintiff has made no showing that the original records were not prepared at or near the time of work performed. As Judge Smith noted, "[i]n this day and age where

electronically stored information has become the norm for record keeping in many areas, it would not be unreasonable, in a small business, for hours worked to be noted informally and then reduced to an electronic format for accounting and other purposes," as was the case here. (Decision 9.)  Plaintiff argues that "the records are not contemporaneous" because "Cassarella testified that he had no recollection of when he made the spreadsheet."  (Pl.'s Objs. Mem. 12.) However, it is the original handwritten records that must be prepared at or near the time of work performed; the fact that they were subsequently entered into an excel spreadsheet for record-keeping purposes on an unknown date does not mean they are not contemporaneous records, so long as they accurately reflect the information in the original, contemporaneously-made records. *Cf. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1160 (2d Cir. 1994) (awarding attorneys' fees where counsel "did not submit actual contemporaneous time records, but instead submitted a typed listing of their hours from their computer records," because this practice "falls sufficiently within the meaning of 'contemporaneous'" (citation omitted)).  Here, Casarella testified that Plaintiff himself contemporaneously recorded the time he began and the time he left work each day.  (Casarella Dep. 79.)  Casarella subsequently entered the data that appeared in those contemporaneous records into an excel spreadsheet.  (*Id.* at 87–91.)  Plaintiff points to no testimony or other evidence suggesting that Casarella fabricated information or erred in entering the data into the spreadsheet.  Although Plaintiff argues that the handwritten timesheets would have allowed him to verify whether the records were accurate, the Court cannot merely assume the records are inaccurate where Plaintiff has not pointed to a single entry he believes to be so.  *See, e.g.*, *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 122 (S.D.N.Y. 2008) (finding adverse inference instruction for spoliation inappropriate where "the only evidence that [the] [p]laintiff has adduced suggesting that the unproduced discovery would be unfavorable to

[the] [d]efendants is the non-production itself" (citation, alteration, and quotation marks omitted)).[4]

Plaintiff argues that Judge Smith's analysis "opens the floodgates to fraud" and that a more practical holding would be to require employers to "scan and maintain" the original time records. (Pl.'s Objs. Mem. 11.) However, Judge Smith's ruling does not preclude parties from undermining the veracity of such time records through contradictory testimony or other forms of evidence. *See, e.g.*, *Man Wei Shiu v. New Peking Taste Inc.*, No. 11-CV-1175, 2014 WL 652355, at *8 (E.D.N.Y. Feb. 19, 2014) (receiving recreated time records into evidence but according them little weight based on credible testimony and other evidence suggesting they were inaccurate); *Mazza*, 2008 WL 11411849, at *6 ("Although a sanction for spoliation of evidence may not be justified here, the [c]ourt will consider a jury instruction that would allow the jury to take into account the company's failure to maintain appropriate records."). The Court finds only that Judge Smith did not clearly err in holding that the failure to retain the handwritten timesheets on which electronic payroll records are based does not, without more, violate the obligation to preserve such records warranting spoliation sanctions.[5]

_____

[4] Also, there is no argument that the time records were not "maintained," (Decision 9), as they were produced in this Action.

[5] In his Objections, Plaintiff claims that Judge Smith "overlooked" his argument that the Defendants had a common law duty to preserve original time records, but also acknowledges that he did not cite case law "because [the duty] is such a well-known legal principle that it seemed unnecessary." (*See* Pl.'s Objs. Mem. at 13–14.) Specifically, Judge Smith stated that "[i]nsofar as Plaintiff cites only federal and state regulations regarding the obligation to preserve, the Court does not address the question of whether Defendants otherwise had an obligation to preserve the paper records and/or when such obligation would have arisen." (Decision 9 n.3.) Plaintiff's argument that Defendants violated their duty to preserve evidence relating to pending litigation presumes that the handwritten records were entered into the computer *after* the start of litigation, but he offered no supporting evidence to Judge Smith. Indeed, in assessing whether the handwritten records were destroyed with culpable intent, Judge Smith noted that it was "not clear from the record . . . whether any of the handwritten records were destroyed after the lawsuit

### b. Culpable State of Mind

"Once the duty to preserve attaches, any destruction of documents is, at a minimum, negligent." *NCA Investors Liquidated Trust v. Dimenna*, No. 16-CV-156, 2019 WL 2720746, at *6 (D. Conn. June 27, 2019) (citations omitted). "Failures to preserve evidence 'occur along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality.'" *Singh v. Penske Truck Leasing Co., L.P.*, No. 13-CV-1860, 2015 WL 802994, at *4 (S.D.N.Y. Feb. 26, 2015) (quoting *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999)). Although "[t]he Second Circuit has held that spoliation sanctions may be appropriate where evidence was destroyed merely 'negligently,'" *Singh*, 2015 WL 802994, at *5 (quoting *Byrnie v. Town of Cromwell*, 243 F.3d 93, 109 (2d Cir. 2001)), even a finding of gross negligence merely "permits, rather than requires, a district court to give an adverse inference instruction," *Chin*, 685 F.3d at 162.

"[T]he state of mind of the alleged spoliator determines what standard is necessary to prove relevance." *Distefano v. Law Offices of Barbara H. Katsos, PC*, No. 11-CV-2893, 2017 WL 1968278, at *5 (E.D.N.Y. May 11, 2017). "The level of culpability is important because when bad faith is found, the court presumes relevance; and when a party is grossly negligent, relevance is presumed under certain circumstances and a movant need not separately demonstrate the relevance of the material." *See World Trade Ctrs. Ass'n, Inc. v. Port Authority of N.Y. & N.J.*, No. 15-CV-7411, 2018 WL 1989616, at *7 (S.D.N.Y. April 2, 2018) (citing *Byrnie*, 243 F.3d at 108).

---

started." (Dkt. No. 53 at 11.) Thus, even if Plaintiff had raised an argument based on the duty to preserve material evidence in connection with pending litigation, he provided no evidence that would permit a finding that the duty was violated.

"[W]here the destruction was merely negligent, [a] plaintiff must also demonstrate that the destroyed evidence would have been favorable to him, since in those cases it cannot be inferred from the conduct of the spoliator that the evidence would have been harmful to him." *See Garvey v. Town of Clarkstown*, No. 13-CV-8305, 2018 WL 1026379, at *10 (S.D.N.Y. Feb. 22, 2018) (citations and quotation marks omitted). "Special caution must be exercised" where the destruction is negligent "to ensure that the inference is commensurate with the information that was reasonably likely to have been contained in the destroyed evidence." *Id.* (citation and quotation marks omitted). Plaintiff must "demonstrate through extrinsic evidence, such as other existing documents or deposition testimony, that a reasonable jury could find that the missing [evidence] would have been favorable to his claims." *Curcio v. Roosevelt Union Free School Dist.*, 283 F.R.D. 102, 113 (E.D.N.Y. 2012). Plaintiff does not need to show that specific documents were lost; "it would be enough [for Plaintiff] to demonstrate that certain types of relevant documents existed and that they were necessarily destroyed." *Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13-CV-5475, 2015 WL 5027899, at *10 (E.D.N.Y. Aug. 25, 2015) (citations and alterations omitted); *see Heng Chan v. Triple 8 Palace, Inc.*, No. 03-CV-6048, 2005 WL 1925579, at *8–9 (S.D.N.Y. Aug. 11, 2005) (finding that relevance of spoliated employment and business records could be inferred from other documentary and testamentary evidence of defendant's business practices); *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 427–29, 436 (S.D.N.Y. 2004) (finding that the relevance of deleted e-mails could be inferred from other e-mails that had been recovered and eventually produced). A court may also consider a party's sophistication and resource levels to determine the spoliator's mindset. *See Lokai Holdings LLC v. Twin Tiger USA LLC*, No. 15-CV-9363, 2018 WL 1512055, at *11 (S.D.N.Y. Mar. 12, 2018) (noting that small businesses with few employees

"should not [be] held to the same standard as a large corporation with greater resources");

*Neverson-Young v. BlackRock, Inc.*, No. 09-CV-6716, 2011 WL 3585961, at *3 (S.D.N.Y. Aug.

11, 2011) (finding that plaintiff who donated her laptop was "merely negligent" based on the fact

that "[i]n contrast to corporate actors . . . [plaintiff] is unsophisticated and unaccustomed to the

preservation requirements of litigation").

      Judge Smith held that "the evidence as to whether Defendants acted with a culpable state

of mind is equivocal at best."  (Decision 13.)  She reasoned that the inconclusive nature of

Casarella's testimony, in which he was unable to identify exactly when the originals were

discarded, and the absence of any other evidence on the subject, precluded her from finding that

the records were destroyed after the start of the litigation.  (*Id.* at 12–13.)  Judge Smith relied on

*Hamilton* for the proposition that when records are typed and then discarded before the

commencement of litigation, "the party destroying the notes would have no reason to think that

he or she were destroying notes that would ultimately be useful to any party in the future," and

therefore lacks the culpable state of mind required to impose spoliation sanctions.  (Decision 12–

13 (citing *Hamilton*, 528 F. Supp. 2d at 441).)  In his Objections, Plaintiff attempts to distinguish

*Hamilton* by arguing that the notes there were typed "pre-litigation," whereas Defendants

"destroyed the Plaintiff[']s record of his hours worked . . . after litigation began."  (Pl.'s Objs.

Mem. 19.)  However, Plaintiff submitted no evidence to Judge Smith demonstrating that the

records were destroyed after litigation began.  The deposition testimony on which Plaintiff relies

in his Objections does not, as Plaintiff argues, reflect an admission by Casarella that he destroyed

the records after litigation had started.  Rather, Casarella testified that he "filed" the original

records after entering them into the computer, and that he didn't know whether they were lost

after the lawsuit began.  (Casarella Dep. 83–84 ("Q. But [the handwritten timesheets] were

destroyed after the lawsuit started. I don't want to say destroyed, because you don't like that word. They were— A. Filed. Q. What's the word that I should use? A. Be filed, put away. I don't—I don't know.").) Judge Smith thus correctly found that while "Casarella's testimony was confused as to when the Excel spreadsheets were created," "the evidence as to whether Defendants acted with a culpable state of mind is equivocal at best." (Decision 11–13 & n.4.) Because Plaintiff failed to offer any evidence of bad faith, Judge Smith did not clearly err in holding that Plaintiff failed to demonstrate that Defendants acted with a culpable state of mind.[6]

### c. Relevance to Plaintiff's Claims

To prove relevance, the party must show "that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Residential Funding*, 306 F.3d at 109 (citing *Byrnie*, 243 F.3d at 107–12). Judge Smith held that "there is no evidence in the record that the contents of the handwritten time records differ in any way from the typewritten time records contained in the Excel spreadsheets," and that the original timesheets are therefore not relevant to any claim or defense. (Decision 14.) Furthermore, Judge Smith found that even if Defendants negligently destroyed the handwritten timesheets, an adverse inference instruction would not be an appropriate sanction because any claim of prejudice is "speculative." (*Id.* at 14–15.)

The Court finds no clear error in Judge Smith's conclusions. Because Plaintiff failed to introduce any evidence that the handwritten records would reveal something that contradicts the typewritten records, his claim that the original timesheets were relevant fails. *See Hamilton*, 528 F. Supp. 2d at 444–45 (holding handwritten notes "have no real relevance to this case" where

---

[6] The Court addresses Plaintiff's attempt to introduce new evidence not submitted to Judge Smith in support of Defendants' culpability in Section II.B.3.

"the only evidence in the record as to the contents of these notes is that they are identical to the typewritten version"). Plaintiff argues that the mere fact that the handwritten copies were lost demonstrates that they would have contradicted the typewritten records. (Pl.'s Objs. Mem. 22 ("Why else would they have been destroyed?").) Plaintiff cites no case that supports this argument. Nor could he, as the caselaw supports the notion that the mere loss of original copies of evidence does not automatically warrant preclusion of that evidence or an adverse inference instruction. *See Residential Funding*, 306 F.3d at 109 ("[T]he party seeking an adverse inference must adduce sufficient evidence from which a reasonable trier of fact could infer that the destroyed or unavailable evidence would have been of the nature alleged by the party affected by its destruction." (citation, alteration, and quotation marks omitted)); *Hamilton*, 528 F. Supp. 2d at 445 ("In the absence of any extrinsic evidence whatever tending to show that the destroyed evidence would have been unfavorable to the spoliator, no adverse inference is appropriate." (citation and quotation marks omitted)); *Mitchell v. Fishbein*, No. 01-CV-2760, 2007 WL 2669581, at *5 (S.D.N.Y. Sept. 13, 2007) (same); *see also Caltenco v. G.H. Food, Inc.*, No. 16-CV-1705, 2018 WL 1788147, at *6 (E.D.N.Y. Mar. 7, 2018) (same) (collecting cases). Only a finding of bad faith "is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party," *Residential Funding*, 306 F.3d at 109, and Plaintiff has not established bad faith on the part of Defendants. Therefore, Plaintiff has failed to establish relevance of the underlying handwritten timesheets sufficient to warrant an adverse inference instruction. *See Treppel*, 249 F.R.D. at 122 (finding adverse inference instruction inappropriate where "the only evidence that [the] [p]laintiff has adduced suggesting that the unproduced discovery would be unfavorable to [the] [d]efendants is the non-production itself" (citation, alteration, and quotation marks omitted)); *Great N. Ins. Co. v. Power*

*Cooling, Inc.*, No. 06-CV-874, 2007 WL 2687666, at *12 (E.D.N.Y. Sept. 10, 2007) (declining to allow adverse inference instruction where the defendant "has not offered any . . . evidence" to suggest destroyed evidence would have supported its position, because "although [the] defendant has demonstrated that (1) [the] plaintiff had a duty to preserve the [evidence], and (2) [the] plaintiff acted with a culpable state of mind in knowingly destroying the [evidence], [the] defendant has not demonstrated that (3) [the evidence] would support [the defendant's] defenses"); *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 77 (S.D.N.Y. 1991) (holding no adverse inference instruction was warranted where vehicle maintenance records were destroyed because, inter alia, "the plaintiff has offered no extrinsic evidence to corroborate the suggestion that the brakes were faulty").  However, the Court agrees with Judge Smith's finding that "although an adverse inference instruction is unwarranted, evidence of the destruction of the original handwritten time records as well as the creation of the Excel spreadsheets may be admissible at trial."  (Decision 15.)  *See Liu v. Win Woo Trading, LLC*, No. 14-CV-2639, 2016 WL 3280474, at *8 (N.D. Cal. June 15, 2016) (finding adverse inference instruction unwarranted absent finding of bad faith in loss of employee timesheets, but noting that the court "will certainly entertain motions in limine to exclude altered or corrected time records").

### 3. New Evidence

Plaintiff seeks to introduce metadata evidence showing that the handwritten records were destroyed after the litigation had begun, as well as evidence from class discovery, proffered for the first time in Plaintiff's Reply, showing that Defendants did not have records, handwritten or computerized, for any other "back of the house kitchen staff employee."  (Pl.'s Objs. Mem. 15; *see also* Pl.'s Aff'n Ex. 17 ("Metadata"); Pl.'s Reply Aff'n ¶ 4.)

"While the Court is generally not precluded from considering additional evidence not submitted by a party to a magistrate judge when reviewing a report and recommendation issued by such a judge on a dispositive motion [pursuant to Rule 72(b) of the Federal Rules of Civil Procedure], there is nothing in Rule 72(a) of the Federal Rules of Civil Procedure which states that it may do so on a non-dispositive issue, such as that decided here." *See Creighton v. City of New York*, No. 12-CV-7454, 2015 WL 8492754, at *5 (S.D.N.Y. December 9, 2015) (quoting *State Farm Mut. Auto. Ins. Co. v. CPT Medical Servs., P.C*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005))).  Rule 72(b) addresses dispositive motions and expressly dictates that in resolving objections, a district judge may "receive further evidence," *see* Fed. R. Civ. P. 72(b)(3), while Rule 72(a) is silent on the subject.  Courts in the Second Circuit have interpreted this silence, in light of the express authorization to consider additional evidence under Rule 72(b), as indicating that a judge cannot entertain new evidence on a non-dispositive Rule 72(a) motion.  *See Khatabi v. Bonura*, No. 10-CV-1168, 2017 WL 10621191, at *5 (S.D.N.Y. Apr. 21, 2017) (collecting cases for the proposition that "[n]ew arguments and factual assertions cannot properly be raised for the first time in objections to the R & R, and indeed may not be deemed objections at all" (citation and quotation marks omitted)); *Verint Sys. Inc. v. Red Box Recorders Ltd.*, 183 F. Supp. 3d 467, 470 (S.D.N.Y. 2016) ("In reviewing the decision of a magistrate judge, a district judge should not consider factual evidence that was not presented to the magistrate judge." (citation and quotation marks omitted)); *Creighton*, 2015 WL 8492754, at *5 ("The overwhelming weight of authority favors the view that, upon review of objections to a magistrate judge's non-dispositive ruling, a district court may not consider evidence not presented to the magistrate judge in the first instance." (citation and quotation marks omitted)); *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013)

("Rule 72(a) precludes the district court from considering factual evidence that was not presented to the magistrate judge."), *appeal withdrawn* (Nov. 7, 2013). Indeed, "the Court has not found [a case] in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge," *State Farm*, 375 F. Supp. 2d at 158, and Plaintiff concedes that "there are no cases on record on which objections were sustained based on additional evidence," but argues that "this case should be the first," (Pl.' Objs. 16). In light of the overwhelming caselaw in the Second Circuit indicating that courts may not consider evidence not presented to the magistrate judge in connection with the original non-dispositive motion, the Court declines to consider the new evidence submitted by Plaintiff. *See Khatabi*, 2017 WL 10621191, at *5 (overruling the plaintiff's objections to report and recommendation based on existence of handwritten notes despite new evidence confirming the existence of such notes because there was "no clear error *based on the record before* [the] Magistrate Judge" (emphasis added)).[7]

---

[7] Plaintiff cites no record evidence in support of his assertion that the issue of metadata was raised several times, nor clearly explain why he had to "move quickly for spoliation because of [discovery] deadlines." (Pl.'s Objs. Mem. 16.) Furthermore, it is not clear that the produced metadata demonstrates that the handwritten time records were destroyed after litigation began, or that Plaintiff would be entitled to an adverse inference instruction on that basis. The spreadsheet to which the metadata refers includes what appears to be a work schedule for a single week in September 2016 for an employee named "Mike Tyson," rather than Plaintiff. (*See* Metadata.) Without the benefit of a developed record with respect to this evidence, the Court cannot determine whether it suggests the hundreds of pages of spreadsheets containing Plaintiff's time records for his three years of employment were in fact created after litigation began, and the handwritten timesheets subsequently discarded, which is precisely why courts are instructed to decline to consider new evidence under Rule 72(a). *See Creighton*, 2015 WL 8492754, at *5 ("Although a district court has the inherent authority to consider further evidence in reviewing rulings on dispositive matters, such discretion should rarely be exercised in this context, because the district court functionally operates as an appellate tribunal under Rule 72(a)." (citation and quotation marks omitted)).

## III. Conclusion

For the foregoing reasons, Plaintiff's Objections are overruled, and Plaintiff's Motion for

spoliation sanctions is denied.[8]

SO ORDERED.

Dated:   August 22, 2019
         White Plains, New York

KENNETH M. KARAS
United States District Judge

---

[8] Plaintiff concedes that "[i]f the Court overrules the objections, . . . [Judge Smith] did not err in declin[ing] an award of attorneys['] fees." (Pls.' Objs. Mem. 23.)